1  KRISTIN T. MIHELIC, ATTORNEY #278483
   TRIAL ATTORNEY
2  OFFICE OF THE UNITED STATES TRUSTEE
   880 FRONT STREET, SUITE 3230
3  SAN DIEGO, CA  92101-8511
   (619) 557-5013
4  Attorney for
   TIFFANY L. CARROLL
5  ACTING UNITED STATES TRUSTEE

6            UNITED STATES BANKRUPTCY COURT
             SOUTHERN DISTRICT OF CALIFORNIA
7

8  In re:                        )    Case No.  18-06051-LT11
                                 )
9                                )    UNITED STATES TRUSTEE'S
   CHRISTOPHER D. DOUGHERTY      )    MOTION TO CONVERT CASE TO
10 and NEREIDA I. DOUGHERTY,     )    ONE UNDER CHAPTER 7, OR IN
                                 )    THE ALTERNATIVE, FOR
                                 )    APPOINTMENT OF CHAPTER 11
11                               )    TRUSTEE
                                 )
12        Debtors in Possession  )    Hearing Date:
                                 )    Hearing Time:
                                 )    Judge:    Laura S. Taylor
13

14        NOW COMES, the United States Trustee ("UST"), by and through her

15 attorneys, and for her Motion To Convert Case To One Under Chapter 7, Or In the

16 Alternative, For Appointment of Chapter 11 Trustee, states as follows:

17        Following the testimony of the Debtors at three sessions of the 341 Meeting

18 of Creditors, and the review of hundreds of documents regarding the Debtors'

19 financial affairs and business operations, it is apparent that the case must be

20 converted due to the Debtors' unexcused failures to satisfy timely the filing and

21

                                   1

reporting requirements and to timely provide information reasonably requested by the UST; the Debtors' gross mismanagement of the Estate post-petition; and the continuing and substantial losses to the Estate and the absence of a reasonable likelihood of rehabilitation.

The UST has formed the preliminary view that the Debtors do not engage in business operations that would justify the appointment of a Chapter 11 Trustee. However, the Debtors have not been forthcoming in their testimony at the 341 Meeting of Creditors and new facts regarding the scope and nature of their business interests frequently come to light. In addition, the Debtors are members and shareholders of at least three closely-held companies, some of which appear to have active and substantial business operations. As a result, the UST requests the alternative relief of the appointment of a Chapter 11 Trustee, pursuant to Section 1104 of the Bankruptcy Code, for cause based upon fraud committed by the Debtors prior to the commencement of the case and gross mismanagement of the Debtors after commencement of the case.

//

//

//

//

## FACTUAL BACKGROUND

## Post-Petition Compliance Deficiencies And Business And Financial Mismanagement

The Debtors filed their voluntary petition under Chapter 11 on October 9, 2018.[1]  All of the Debtors' monthly operating reports were filed late as follows:

| Court Doc Number | Period | Date Filed |
|---|---|---|
| 98 | October 2018 | January 16, 2019 |
| 99 | November 2018 | January 16, 2019 |
| 122 | December 2018 | February 5, 2019 |
| 153 | January 2019 | February 27, 2019 |

See Declaration of Kenneth Dennis dated March 13, 2019 at ¶ 3.

The Debtors are the majority or sole owners and members of the following entities:

| Entity | Percentage Owned |
|---|---|
| C&D Professional Services, Inc. | 100% |
| JTA Farm Enterprises, LLC | 85% |
| JTA Real Estate Holdings, LLC | 100% |
| RD3, Inc. | 100% |

See Dennis Decl. at 12.

During the course of the three sessions of the 341 meeting of creditors, and thereafter, the UST requested that the Debtors provide numerous documents

---

[1]  The UST requests that the Court take judicial notice of the docket and the filings in this case pursuant to F.R.E. 201.

concerning their business and financial affairs, as well as explanations for transactions appearing in the monthly operating reports. <u>See</u> Dennis Decl. at ¶ 1. The Debtors have failed to provide numerous items requested by the UST including providing evidence of the opening of DIP bank accounts and the closing of their prepetition accounts. <u>See</u> Exh. 1 to Dennis Decl. Upon information and belief, the Debtors have failed to open any debtor-in-possession bank accounts and have failed to close their pre-petition accounts.

Among the currently outstanding documents requested by the UST are the following key items: bank statements for 22 additional bank accounts, the existence of which was independently discovered by the UST and not disclosed by the Debtors; questions regarding a bar and an investment represented by the Debtors to being held for the benefit of the Debtors' children while income is being received by the Debtors; records concerning numerous cash withdrawals in amounts over $500; bank statements for accounts held in the names of the Debtors' children; a detailed list of all real and personal property (value over $200) in the possession or control of the Debtors or any of their affiliated entities as of the petition date; copies of paypal and Venmo statements; and 38 questions on activity reported in the monthly operating reports. <u>See</u> Dennis Decl. at ¶ 1.

The Debtors provided a list of responses to the 38 questions concerning the monthly operating reports on March 8, 2019. <u>See</u> Dennis Decl. at ¶ 2; Exh. 12 to

Dennis Decl. However, in almost every instance, the explanation was inadequate to justify the disbursement from Estate funds.  The Debtors paid the expenses of adult family members, expenses for other entities, or failed to provide the requested documentation for over $35,000 in disbursements for the time period October 9, 2018 through December 31, 2018.  A detailed list of the unjustified disbursements is set forth in paragraph 2 of the Dennis Declaration.

The operating reports show that the Debtors have continued to spend amounts on themselves that appear to be excessive or unusual.  They also show that the Debtors paid expenses post-petition totaling $15,099.76 for other entities. See Exh. 12 to Dennis Decl. A chart outlining the expenses paid by the Debtors post-petition for their related entities is set forth in paragraph 4 of the Dennis Declaration.

The operating reports filed in this case report the following income and expense activity:

|  | Oct 9 to Oct 31, 2018 | November 2018 | December 2018 | January 2019 |
|---|---|---|---|---|
| Receipts | 16,275.40 | 31,082.38 | 17,883.55 | 18,939.01 |
| Disbursements | 11,966.96 | 29,764.27 | 25,677.95 | 9,570.65 |

See Dennis Decl. at ¶ 5.

1    The operating reports do not generally reveal income from business

2    activities.   Rather, the operating reports reveal transfers and deposits from

3    unknown sources.  See Dennis Decl. at ¶ 6.

4    On November 19, 2018, the Court entered an Order allowing Ms. Dougherty

5    to use her $6,527.33 net monthly salary from San Diego Mesa College for living

6    expenses.  See Dennis Decl. at ¶ 7.  On February 7, 2019, the Court entered an

7    Order (Docket No. 126) allowing the Debtors to use $3,500 per month owner

8    withdrawal from JTA Real Estate Holdings, LLC ("JTA Real Estate") and $3,000

9    per month owner withdrawal from JTA Farm Enterprises, LLC ("JTA Farms") for

10    living expenses.  See Dennis Decl. at ¶ 8.  The total amounts that the Court

11    authorized the Debtors to use was $13,027.33.  See Dennis Decl. at ¶  9.

12    The amount of disbursements reported in the November 2018 and December

13    2018 operating reports exceed the authorized amounts by $16,736.94 for

14    November 2018 and $12,650.62 for December 2018 as follows:

15
16

|  | November 2018 | December 2018 |
|---|---|---|
| Disbursements | 29,764.27 | 25,677.95 |
| Amount Authorized by the Court | 13,027.33 | 13,027.33 |
| **Excess Amount** | **16,736.94** | **12,650.62** |

17

18

19    See Dennis Decl. at ¶ 9.

20

21

6

The operating reports reflect that the Debtors also appear to be regularly transferring Estate funds to and from family member accounts without Court approval and for unknown reasons. See Dennis Decl. at ¶ 10. The UST has requested, but has not received, copies of bank statements for the Debtors' minor children. A detailed list of the transfers reported in the operating reports is set forth in paragraph 10 of the Dennis Declaration. These transfers include numerous deposits into the Debtors' account from accounts apparently belonging to the minor children, which have not been disclosed by the Debtors, as well as disbursements made to the minor children. Id.

The operating reports do not include copies of the disbursement checks. Dennis Decl. at ¶ 11. The operating reports reflect regular bank deposits but provide little information regarding the source or purpose of the funds. Id. The lack of disclosure makes it difficult for creditors and the UST to monitor and understand the Debtors' financial activities and to evaluate whether the Debtors are acting in the best interest of the Estate. Id.

At the Section 341 meeting held on January 15, 2019, Mr. Dougherty testified that JTA Real Estate would be filing Chapter 11 and would file a joint plan of reorganization with the Debtors. Dennis Decl. at ¶ 13. He testified that the Plan would be funded by the sale of the ranch located at 21702 Japatul Rd. in Alpine, California and through income produced from the use of the trucks owned

7

by JTA Real Estate.  Id.  The trucks owned by JTA Real Estate are operated by RD3, Inc.  Dennis Decl. at ¶ 14.

The Debtors have filed four Rule 2015.3 periodic reports for RD3, Inc., which collectively cover the time period January 2016 through January 2019.  Id. The profit and loss statements included with the reports are summarized as follows:

| | 2017 | 11 months ended 11/30/18 | December 2018 | January 2019 |
|---|---|---|---|---|
| Total income | 612,702.45 | 328,053.99 | 0.00 | 0.00 |
| Total expenses | 605,086.36 | 324,091.80 | 1,236.23 | 0.00 |
| Net gain/loss | 7,616.09 | 3,962.17 | <1,236.23> | 0.00 |

See Dennis Decl. at ¶ 14.

These reports reflect net gains and losses that demonstrate that RD3, Inc.'s operations do not have the ability to fund a plan.  Dennis Decl. at ¶ 16. Furthermore, a review of the associated general ledgers shows that 71.2% of the income reported income for 2017 and 86.6% of the income reported for 2018 was for work performed for entities controlled by the Debtors.  Dennis Decl. at ¶ 15.  A summary of the reported income of RD3, Inc. is set forth in paragraph 15 of the Dennis Declaration.

The Rule 2015.3 reports show that RD3, Inc. does not have revenues from third party customers that could fund a chapter 11 plan.  Dennis Decl. at ¶ 16. There is no basis to conclude that the Debtors have experience operating a business, using the trucks owned by JTA Real Estate, with revenues sufficient to fund a chapter 11 plan.  Id.

In addition, the Rule 2015.3 reports filed by the Debtors for JTA Real Estate and JTA Farms also demonstrate the Debtors' inability to profitably operate a business.  Dennis Decl. at ¶ 17. The Rule 2015.3 reports filed for JTA Real Estate reflect losses for all periods except for January 2018 - November 2018 which purports to report a gain of $96,963.35. Dennis Decl. at ¶ 17.  A chart summarizing the income and expenses for JTA Real Estate is set forth in paragraph 17 of the Dennis Declaration.

Included in the January to November 2018 profit and loss statement is a negative expense of $574,794.15 described as "Reconciliation Discrepancies." When the UST adjusted the profit and loss statement for this negative expense, the adjustment resulted in a loss of <$477,830.80> as follows:

|  | Doc 72 January to November 2018 |
|---|---|
| Income | 221,450.02 |
| Expenses | 124,486.67 |
| Reported net income <Loss> | 96,963.35 |
| Less Reconciliation Discrepancies | 574,794.15 |
| Adjusted Net income <Loss> | (477,830.80) |

Dennis Decl. at ¶ 18.

The Rule 2015.3 reports filed by the Debtors for JTA Farms include questionable accounting. When the UST made appropriate adjustments, the adjustments resulted in a net loss in 2017 of <$194,387.64.>. Dennis Decl. at ¶ 19 – 20. A detailed description of the adjustments made to the 2017 profit and loss statement for JTA Farms is set forth in paragraphs 19 and 20 of the Dennis Declaration.

The profit and loss statement included with the Rule 2015.3 report for January to December 2018 reflects a loss of <$78,498.16>. Dennis Decl. at ¶ 21. This report also contains unusual accounting. Dennis Decl. at ¶ 22. The general ledger included with the report reveals that $105,000 in income consisted of "equity deposits" received from the "Dougherty Family Trust Fund". Id. These deposits consisted of six $15,000 monthly receipts received between February 1,

2018 and July 1, 2018.  Id. The general ledger also reports $155,097.77 in "Reconciliation Discrepancies" that are not explained in the report. Id.

When the UST adjusted the 2018 profit and loss statement for "equity deposits" and "reconciliation discrepancies", the adjusted net loss for this period was <$28,379>.  Dennis Decl. at ¶ 23.  Detailed charts outlining the UST's calculations for JTA Farms' profit and loss are set forth in paragraphs 21 through 23 of the Dennis Declaration.

The profit and loss statement included with the 2015.3 report for January 2019 for JTA Farms also includes a $15,000 equity deposit apparently received in January 2019 and classified as income.  Dennis Decl. at ¶ 24.  The general ledger included with the report did not include an account for equity contributions. Therefore, the UST was unable to determine if the source of the $15,000 was also the Dougherty Family Trust Fund.  Dennis Decl. at ¶ 25.  The Debtors' January 2019 Operating Report does not include any disclosure about this $15,000, and does not reference the Dougherty Family Trust Fund.  Id.

The operating reports and the motions for relief from the automatic stay filed in this case report that the Debtors are delinquent on the pre and post-petition mortgage obligations. Dennis Decl. at ¶ 26. The January 2019 Operating Report reports post-petition delinquencies to HSBC and Lyon/Chestnut.  Id.

The Court docket for this case reveals that 12 adversary complaints predicated on section 523 to determine dischargeability of debt have been filed against the Debtors.  A detailed summary of these adversary proceedings is set forth in paragraph 28 of the Dennis Declaration.

The entities owned by the Debtors have demonstrated pre-petition and post-petition that they do not have the ability to generate net income that can be used to fund a plan. See Dennis Decl. at ¶ 29. RD3, Inc. is not operating and neither JTA Farms nor JTA Real Estate is able to produce net income.  Id. The Debtors and their entities have been unable to timely pay their monthly post-petition mortgage payments and appear to have no ability to fund the defense of the 12 adversary proceedings.  Indeed, it was reported by Debtors' counsel on the record during the hearing on February 28, 2019 that the Debtors had instructed him not to oppose any adversary proceeding and to stipulate to the full amount being requested in each adversary complaint.  The liability of the Estate attributable to these adversary proceedings is currently unknown.

### Pre-Petition Fraud and Ponzi Scheme

The following bank statements were provided to the UST by the Debtors for C&D Professional Services Inc. ("C&D") for 2018:

| Bank | Account Number | Periods covered |
|------|----------------|-----------------|
| US Bank | 1002 | November 24, 2017 to March 31, 2018 |

| Bank of America | 3774 | January 1, 2018 to November 30, 2018 |
| San Diego County Credit Union | 8337 | March 9, 2018 to August 31, 2018 |

Dennis Decl. at ¶ 30.

The UST was able to independently obtain copies of many of the counter withdrawals, deposit information, and check copies not included with the provided bank statements ("Additional Banking Documents").  Dennis Decl. at ¶ 31.  A review of the bank statements provided by the Debtor and the Additional Banking Documents reveals that C&D received eight amounts totaling $1,159,378.46 from investors between December 8, 2017 and May 2, 2018.  Id. A detailed list of these investments is set forth in paragraph 31 of the Dennis Declaration.

The UST was unable to find evidence from the review of the bank statements that that these funds were directly invested or used for the benefit of these investors.  Dennis Decl. at ¶ 32. Instead the funds were deposited into bank accounts belonging to C&D then immediately thereafter, the deposits were either: (1) disbursed to other investors (and sometimes the same investor) and noted on the  check  as "dividends" or "principal"; (2) transferred to the Dougherty Family Trust; (3) used for C&D operating expenses (or possibly operating expenses of other affiliated entities); or (4) used to pay the personal expenses of Chris

Dougherty, with a large portion of these funds having been withdrawn by Chris Dougherty at bank branches.

The Debtors filed four Rule 2015.3 periodic reports for C&D with the Court covering the time period January 2016 through January 2019.  See Dennis Decl. at ¶ 33.

The reports included general ledgers for the periods covered by the reports. See Dennis Decl. at ¶ 34. The UST reviewed the general ledgers to gain an understanding of how C&D was accounting for investor funds deposited into its accounts.  The UST was unable to find five investor deposits, or any accounting for them, in the general ledgers.  Id. A detailed list of the investor deposits that are missing from the C&D general ledgers is set forth in paragraph 34 of the Dennis Declaration.

The UST also notes that the general ledger included with the November 30, 2018 report did not clearly identify an additional three of the investor deposits.  It appears to the UST that the amounts were recorded as C&D revenue and income instead of as a trust liability for investor funds.  See Dennis Decl. at 35-36.

The UST has preliminary determined how the Debtors expended the $1,159,378.46 of investor funds, which is detailed as follows.

The balance in US Bank account ending in 1002 was $3,599.73 when $300,000 was received from the Spruill Family Trust on December 8, 2017. See

Dennis Decl. at ¶ 38. By December 19, when most of the funds had been spent, the balance of the account had been reduced to $32,109.87. See Id.; Exh. 2, 3 to Dennis Decl.

From the bank documents, the UST prepared an accounting of how the $300,000 was spent. Id. Legible notations from copies of the investor canceled checks in Exhibit 3 are designated with quotation marks:

| Date | Ck# | Paid to/Received from | Deposits | With/drawals | Balance | Description |
|------|-----|----------------------|----------|--------------|---------|-------------|
| | | Beginning bank balance | | | 3,600 | |
| 12/8/17 | | Wire credit | 300,000 | | 303,600 | Spruill Family Trust |
| 12/8/17 | | Customer Withdrawal | | 30,000 | 273,600 | W/D Chris Dougherty |
| 12/8/17 | | Customer Withdrawal | | 16,000 | 257,600 | W/D Chris Dougherty |
| 12/8/17 | | Customer Withdrawal | | 7 | 257,593 | W/D Chris Dougherty |
| 12/8/17 | | Customer Withdrawal | | 28,000 | 229,593 | W/D Chris Dougherty |
| 12/8/17 | 119 | Chase Marriott Rewards | | 8,500 | 221,093 | Credit Card Payment |
| 12/8/17 | | Customer Withdrawal | | 60 | 221,033 | W/D Chris Dougherty |
| 12/8/17 | | Customer Withdrawal | | 40,007 | 181,026 | W/D Chris Dougherty |
| 12/8/17 | | Customer Withdrawal | | 16,000 | 165,026 | W/D Chris Dougherty |
| 12/11/17 | 116 | Alan Silver | | 6,431 | 158,595 | "Div" |
| 12/11/17 | 115 | James Lara | | 1,212 | 157,383 | Payment to investor |
| 12/11/17 | | Customer Withdrawal | | 15,000 | 142,383 | W/D Chris Dougherty |
| 12/11/17 | 118 | Navy Federal CC | | 8,500 | 133,883 | Credit card payment |
| 12/11/17 | | Egnyte Inc | | 45 | 133,838 | Office expense |
| 12/11/17 | | Shell Service Station | | 75 | 133,763 | Auto expense |
| 12/12/17 | | Customer Withdrawal | | 20,000 | 113,763 | W/D Chris Dougherty |
| 12/12/17 | | Customer Withdrawal | | 20,000 | 93,763 | W/D Chris Dougherty |
| 12/12/17 | | Customer Withdrawal | | 10,000 | 83,763 | W/D Chris Dougherty |
| 12/12/17 | | Temecula Creek I | | 54 | 83,709 | Personal travel |
| 12/12/17 | | Springhill Suite | | 371 | 83,338 | Personal travel |
| 12/13/17 | | Fusion Investment | 3,288 | | 86,626 | |
| 12/13/17 | 117 | Bryan Dougherty | | 10,425 | 76,201 | Payment to family member |
| 12/13/17 | | DLX FOR SMALLBUS | | 155 | 76,046 | Office expense |

15

| | | | | | | |
|---|---|---|---|---|---|---|
| 12/14/17 | 121317 | Navy Federal CU | | 4,501 | 71,545 | Credit card payment |
| 12/14/17 | | Safeco Insurance | | 1,011 | 70,534 | Insurance |
| 12/15/17 | 106 | Sharon Vega | | 127 | 70,407 | "3rd Quarter" |
| 12/15/17 | 120 | Hank Austin | | 1,738 | 68,669 | Payment to investor |
| 12/15/17 | | Customer Withdrawal | | 2,000 | 66,669 | W/D Chris Dougherty |
| 12/18/17 | | Kenneth Miller | 90 | | 66,759 | Other |
| 12/18/17 | | Compupay Inc | 17 | | 66,776 | Other |
| 12/18/17 | 118 | Elena Totten | | 1,650 | 65,126 | Payment to investor |
| 12/18/17 | 123 | Melba Summers | | 5,000 | 60,126 | "Prin Dist" |
| 12/18/17 | 1000 | Chase Card Services | | 1,900 | 58,226 | Credit card payment |
| 12/18/17 | | Customer Withdrawal | | 10,000 | 48,226 | W/D Chris Dougherty |
| 12/18/17 | | D Lish Express | | 21 | 48,205 | Meals |
| 12/18/17 | | Katsu Seafood | | 75 | 48,130 | Meals |
| 12/18/17 | | CAT Commercial A | | 4,637 | 43,492 | Equipment payment |
| 12/19/17 | 121 | Sixta Loyo | | 200 | 43,292 | "3rd qrt Div" |
| 12/19/17 | | Customer Withdrawal | | 2,000 | 41,292 | W/D Chris Dougherty |
| 12/19/17 | | Customer Withdrawal | | 9,000 | 32,292 | W/D Chris Dougherty |
| 12/19/17 | | Customer Withdrawal | | 7 | 32,285 | W/D Chris Dougherty |
| 12/19/17 | | Romanos 1283 | | 79 | 32,206 | Meals |
| 12/19/17 | | Destination XL | | 97 | 32,110 | Personal clothing |

Dennis Decl. at ¶ 38.

The balance in US Bank account ending in 1002 was $32,109.87 when $200,000.00 was received from the Spruill Family Trust on December 19, 2017. See Dennis Decl. at ¶ 39. By December 22 when the funds had been spent, the balance in the account had been reduced to $25,485.45. Id.; Exh. 2, 3 to Dennis Decl.

16

From the bank documents, the UST prepared an accounting of how the $200,000 was spent. <u>Id.</u> Legible notations from copies of the investor canceled checks in Exhibit 3 are designated with quotation marks:

| Date | Ck # | Paid to/Received from | Deposit | With/drawals | Bank Balance | Description |
|------|------|----------------------|---------|--------------|--------------|-------------|
| 12/19/17 | | Beginning bank balance | | | 32,110 | |
| 12/20/17 | | Wire credit | 200,000 | | 232,110 | Spruill Family Trust |
| 12/20/17 | | Customer Withdrawal | | 10,007 | 222,103 | W/D Chris Dougherty |
| 12/20/17 | | Customer Withdrawal | | 30,000 | 192,103 | W/D Chris Dougherty |
| 12/20/17 | | Return item credit | 7 | | 192,110 | Returned item credit |
| 12/20/17 | | Customer Withdrawal | | 5,000 | 187,110 | W/D Chris Dougherty |
| 12/20/17 | | Customer Withdrawal | | 10,000 | 177,110 | W/D Chris Dougherty |
| 12/20/17 | | The Soco Group | | 3,367 | 173,742 | Construction |
| 12/20/17 | | The Ofelia R Arellano Trust DTS | | 18,000 | 155,742 | Payment to investor |
| 12/21/17 | 124 | Melba Summers | | 5,000 | 150,742 | "Prin Dist" |
| 12/21/17 | 3001 | Estafani nieto | | 2,550 | 148,192 | Payroll |
| 12/21/17 | | Casual Male Xl | | 374 | 147,818 | Clothing |
| 12/21/17 | | George A Thompson Roberta L Thompson | | 60,000 | 87,818 | Payment to investor |
| 12/22/17 | | Customer Withdrawal | | 12,000 | 75,818 | W/D Chris Dougherty |
| 12/22/17 | | JTA Real Estate Holdings | | 10,000 | 65,818 | Transfer |
| 12/22/17 | | Hanover Insurance | | 333 | 65,485 | Insurance |
| 12/22/17 | | Georg E A Thompson Roberta L Thompson | | 40,000 | 25,485 | Payment to investor |

<u>Id.</u>

The balance in US Bank account ending in 1002 was $8,329.10 when $219,378.46 was received from the Taniyama Recoverable Trust on January 18, 2018. <u>See</u> Dennis Decl. at ¶ 40. By January 24 when the funds had been spent, the

17

1  balance of the account had been reduced to $1,208.79.  Id.; Exh. 4, 5 to Dennis

2  Decl.

3      From the bank documents, the UST prepared an accounting of how the

4  $219,378.46 was spent. Id.  Legible notations from copies of the investor canceled

5  checks in Exhibits 4 and 5 are designated with quotation marks:

| Date | Ck # | Payee/ Description of transaction | Deposits | With/ drawals | Bank Balance | Description |
|------|------|-----------------------------------|----------|---------------|--------------|-------------|
| 1/17/18 | | Beginning bank balance | | | 8,329 | |
| 1/18/18 | | Wire credit | 219,378 | | 227,708 | Taniyama Recoverable Trust |
| 1/18/18 | | WestAir Gases & Equipment | | 1,100 | 226,608 | Construction |
| 1/18/18 | | Internet Banking Transfer | | 6,000 | 220,608 | Transfer to Dougherty Family Trust - US Bank 0756 |
| 1/18/18 | | Internet Banking Transfer | | 49,000 | 171,608 | Transfer to Dougherty Family Trust - US Bank 0757 |
| 1/18/18 | | Customer Withdrawal | | 10,500 | 161,108 | W/D Chris Dougherty |
| 1/18/18 | | Deposit item returned | | 15,755 | 145,353 | Return check # 992 from C&D BofA account #3774 |
| 1/18/18 | | Customer Withdrawal | | 13,000 | 132,353 | W/D Chris Dougherty |
| 1/19/18 | | The Ofelia R Arellano Trust DTS | | 10,000 | 122,353 | Payment to investor |
| 1/19/18 | | Carol Pouliot Poway CA | | 20,000 | 102,353 | Payment to investor |
| 1/19/18 | 3005 | Jerry and Anita Cole | | 6,502 | 95,850 | "CN0026" |
| 1/19/18 | | Fedex | | 22 | 95,829 | Office expense |
| 1/19/18 | | Internet Banking Transfer | | 2,000 | 93,829 | Dougherty Family Trust - US Bank 0756 |
| 1/19/18 | | Mobile Banking Transfer | | 12,000 | 81,829 | Dougherty Family Trust - US Bank 0756 |

| 1/19/18 | | Deposited item returned | | 18,975 | 62,854 | Return check # 993 from C&D BofA account #3774 |
|---------|---|---|---|---|---|---|
| 1/22/18 | | Customer deposit | 1,000 | | 63,854 | Whitney R Hulsey |
| 1/22/18 | | Family Auto Serv Alpine CA | | 1,235 | 62,618 | Auto expense |
| 1/22/18 | | Andrew Myers | | 1,790 | 60,828 | Legal |
| 1/22/18 | | Buildin | | 2,000 | 58,828 | Other |
| 1/22/18 | | Internet banking transfer | | 4,000 | 54,828 | Nereida & Christopher Dougherty - US Bank 0822 |
| 1/22/18 | | Customer Withdrawal | | 7,000 | 47,828 | W/D Chris Dougherty |
| 1/22/18 | | Customer Withdrawal | | 8,000 | 39,828 | W/D Chris Dougherty |
| 1/23/18 | 3004 | Robin Kavamaugh | | 1,840 | 37,988 | Payment to investor |
| 1/23/18 | 3007 | Cardmember Service | | 1,500 | 36,488 | Credit card payment |
| 1/23/18 | | Customer Withdrawal | | 15,800 | 20,688 | W/D Chris Dougherty |
| 1/23/18 | 3006 | Jose Munoz | | 1,800 | 18,888 | Office expense |
| 1/23/18 | 3008 | Cardmember Service | | 7,500 | 11,388 | Credit card payment |
| 1/24/18 | | The Ofelia R Arellano Trust DTS | | 10,000 | 1,388 | Payment to investor |
| 1/24/18 | | Siggys 2 | | 39 | 1,349 | Meals |
| 1/24/18 | | Dmi Dell Sm Bus | | 141 | 1,209 | Office expense |

Id.

The balance in US Bank account ending in 1002 was $1,208.79 when $125,000 was received from the Spruill Family Trust on January 25, 2018. See Dennis Decl. at ¶ 41.   By January 31 when most of the funds had been spent, the balance of the account had been reduced to $11,555.05.  Id.; Exh. 4, 5 to Dennis Decl.

From the bank documents, the UST prepared an accounting of how the $125,000 was spent.   Legible notations from copies of the investor canceled checks in Exhibits 4 and 5 are designated with quotation marks:

19

| Date | Ck # | Paid to/Received from | Deposits | With/drawals | Bank Balance | Description |
|---|---|---|---|---|---|---|
| 1/25/18 | | Beginning balance | | | 1,209 | |
| 1/25/18 | | Wire credit | 125,000 | | 126,209 | Spruill Family Trust |
| 1/25/18 | | Internet Banking Transfer | | 2,500 | 123,709 | Nereida & Christopher Dougherty - US Bank 0822 |
| 1/25/18 | | Internet Banking Transfer | | 15,000 | 108,709 | C & N Dougherty - US Bank 0756 |
| 1/25/18 | | Non-Sufficient Funds Fee | | 36 | 108,673 | Bank Fees |
| 1/26/18 | | DMI DELL SM BUS | | 2,928 | 105,744 | Office expense |
| 1/26/18 | | Customer Withdrawal | | 22,000 | 83,744 | W/D Chris Dougherty |
| 1/26/18 | 3011 | Cana Technology | | 1,245 | 82,499 | Office expense |
| 1/29/18 | | Office Furniture | | 344 | 82,155 | OFFICE FURNITURE |
| 1/29/18 | | Toms Hay Farm | | 4,800 | 77,355 | Farm expense |
| 1/29/18 | | Customer Withdrawal | | 5,900 | 71,455 | W/D Chris Dougherty |
| 1/29/18 | | Customer Withdrawal | | 10,000 | 61,455 | W/D Chris Dougherty |
| 1/29/18 | 3012 | JTA Real Estate Holdings LLC | | 7,500 | 53,955 | JTA Real Estate - California Bank & Trust 8975 |
| 1/29/18 | | Customer Withdrawal | | 4,000 | 49,955 | W/D Chris Dougherty |
| 1/30/18 | 3014 | Martha Pittson | | 950 | 49,005 | "CN0008 4th QTR 2017" |
| 1/30/18 | 3010 | Elena Totten | | 15,450 | 33,555 | Payment to investor |
| 1/30/18 | | Family Auto Service | | 2,020 | 31,535 | Auto |
| 1/30/18 | | Customer Withdrawal | | 10,500 | 21,035 | W/D Chris Dougherty |
| 1/31/18 | 3018 | Alan & Aleica Silver | | 6,431 | 14,604 | "CN0023 4th QTR" |
| 1/31/18 | 3013 | Jeffrey & Patricia Kiser | | 3,000 | 11,604 | "CN0004 4th QTR 2017" |
| 1/31/18 | | Intuit Payroll | | 49 | 11,555 | Office |

Id.

The balance in US Bank account 1002 was $7,471.77 when $125,000 was received from the Spruill Family Trust on February 2, 2018. See Dennis Decl. at ¶

42.  By February 13 when most of the funds had been spent, the balance of the account had been reduced to $11,203.09.  Id.; Exh. 6, 7 to Dennis Decl.

From the bank documents, the UST prepared an accounting of how the $125,000 was spent.    Legible notations from copies of the investor canceled checks in Exhibit 6 and 7 are designated with quotation marks:

| Date | Ck # | Paid to/Received from | Deposits | With/drawals | Bank Balance | Description |
|------|------|----------------------|----------|--------------|--------------|-------------|
| 2/2/18 | | Beginning balance | | | 7,472 | |
| 2/2/18 | | Wire In | 125,000 | | 132,472 | Spruill Family Trust |
| 2/2/18 | | Mobile banking transfer | 3,000 | | 135,472 | Nereida & Christopher Dougherty - US Bank 0822 |
| 2/2/18 | | DONALD J BIAGI | | 5,671 | 129,801 | Payment to investor |
| 2/2/18 | | CAROL POULIOT | | 30,000 | 99,801 | Payment to investor |
| 2/2/18 | 3016 | City Treasurer | | 63 | 99,738 | Tax |
| 2/2/18 | | Customer Withdrawal | | 5,500 | 94,238 | W/D Chris Dougherty |
| 2/2/18 | 3015 | Bryan Dougherty | | 4,059 | 90,179 | Dougherty Family member |
| 2/2/18 | | Customer Withdrawal | | 10,000 | 80,179 | W/D Chris Dougherty |
| 2/2/18 | | EGNYTE INC | | 45 | 80,134 | Office expense |
| 2/2/18 | | AMAZON.COM | | 1,700 | 78,434 | Amazon |
| 2/2/18 | | Internet banking transfer | | 3,000 | 75,434 | Nereida & Christopher Dougherty - US Bank 0822 |
| 2/5/18 | 3022 | Melba Summers | | 1,410 | 74,024 | "CN0017 4th QTR" |
| 2/5/18 | | Wire Out | | 1,488 | 72,537 | Payment to investor |
| 2/5/18 | | Customer Withdrawal | | 3,000 | 69,537 | W/D Chris Dougherty |

| Date | Check | Description | Deposit | Withdrawal | Balance | Memo |
|---|---|---|---|---|---|---|
| 2/5/18 | 3026 | JTA Farm - CBT 8983 | | 6,000 | 63,537 | To Dougherty controlled company |
| 2/5/18 | | INTUIT QB ONLIN | | 15 | 63,522 | Office expense |
| 2/5/18 | | INTUIT QB ONLIN | | 15 | 63,507 | Office expense |
| 2/5/18 | | INTUIT QB ONLIN | | 15 | 63,492 | Office expense |
| 2/5/18 | | CARL S JR 110062 | | 16 | 63,476 | Meals |
| 2/5/18 | | ALPINE SUSHI | | 55 | 63,421 | Meals |
| 2/5/18 | | DESTINATION XL | | 493 | 62,928 | Clothing |
| 2/6/18 | 3027 | JTA Farm | | 4,000 | 58,928 | To Dougherty controlled company |
| 2/6/18 | 3031 | Christopher Dougherty | | 2,000 | 56,928 | W/D Chris Dougherty |
| 2/6/18 | 3032 | RD3 Inc. | | 2,000 | 54,928 | To Dougherty controlled company |
| 2/6/18 | | AZTEC APPLIANCE | | 30 | 54,898 | Appliance or personal expense |
| 2/6/18 | | GLOBAL R USA | | 495 | 54,403 | Other |
| 2/6/18 | | AZTEC APPLIANCE | | 650 | 53,753 | Appliance or personal expense |
| 2/6/18 | | MERCEDES BENZ OF | | 1,999 | 51,754 | Auto |
| 2/7/18 | | Reversal | 31 | | 51,785 | Bank Correction |
| 2/7/18 | | Deposit | 393 | | 52,177 | Cheryl & Donald Biagi |
| 2/7/18 | | Proof correction debit | | 31 | 52,147 | Bank Correction |
| 2/7/18 | 3028 | Copysport | | 1,664 | 50,483 | Copier |
| 2/7/18 | | EGNYTE INC | | 95 | 50,388 | Office expense |
| 2/8/18 | | Reversal | 31 | | 50,419 | Bank Correction |
| 2/8/18 | 3024 | Jeffrey & Patricia Kiser | | 2,050 | 48,369 | "CN0007 4th QTR" |
| 2/8/18 | 3023 | Jeffrey & Patricia Kiser | | 2,050 | 46,319 | "CN0007 3rd QTR" |
| 2/8/18 | 3033 | Jose Munoz | | 1,783 | 44,536 | Maintenance |
| 2/8/18 | | The Home Depot | | 4 | 44,532 | Repairs |
| 2/8/18 | | The Home Depot | | 246 | 44,286 | Repairs |
| 2/9/18 | | Customer Withdrawal | | 3,000 | 41,286 | W/D Chris Dougherty |
| 2/9/18 | | DONATO S ITALIAN | | 35 | 41,251 | Meals |
| 2/9/18 | | Mobile Banking Transfer | | 3,000 | 38,251 | Transfer to Nereida & Christopher Dougherty - US Bank 0822 |
| 2/12/18 | | Deposit | 12,000 | | 50,251 | Christopher Dougherty |

| 2/12/18 | 996 | Deposit | 2,500 | | 52,751 | C&D Prof Svcs - BofA 3774 |
|---------|-----|---------|-------|---|--------|----------|
| 2/12/18 | 3030 | Melvin & Helen Rader | | 2,150 | 50,601 | Payment to investor |
| 2/12/18 | | Customer Withdrawal | | 7,000 | 43,601 | W/D Chris Dougherty |
| 2/12/18 | 3034 | JTA Farm | | 15,000 | 28,601 | To Dougherty controlled company |
| 2/12/18 | 3037 | James Lara | | 910 | 27,690 | Computer exp |
| 2/12/18 | 3035 | JTA Real Estate | | 4,000 | 23,690 | To Dougherty controlled company |
| 2/12/18 | | INTUIT QB ONLIN | | 15 | 23,675 | Office expense |
| 2/12/18 | | POSTALANNEX 201 | | 55 | 23,620 | Office expense |
| 2/12/18 | | JANET S MONTANA | | 187 | 23,433 | Meals |
| 2/12/18 | | MICROSOFT STO | | 230 | 23,203 | Office expense |
| 2/13/18 | | Deposit | 11,000 | | 34,203 | C&D Prof Svcs - BofA 3774 |
| 2/13/18 | | Branch Telephone Transfer | 1,500 | | 35,703 | Transfer from Acct 0822 |
| 2/13/18 | | Branch Telephone Transfer | 1,500 | | 37,203 | Transfer from Nereida & Christopher Dougherty - US Bank 0822 |
| 2/13/18 | | CAROL POULIOT | | 11,000 | 26,203 | Payment to investor |
| 2/13/18 | 3040 | JTA Real Estate | | 15,000 | 11,203 | Rent |

Id.

In March 2018, C&D received two investments totaling $140,000 from the Spruill Family Trust.  The balance in Bank of America account ending in 3774 was $857.45 when $120,000 was received from the Spruill Family Trust on March 15, 2018. See Dennis Decl. at ¶ 43.  By March 21, the balance of the account had been reduced to $43,220.86.  Id.  On March 22, a $20,000.00 wire transfer from Harriet

23

1  Mann Taniyama was received.  By March 30, the balance of the account had been

2  reduced to $5,455.92.  Id.; Exh. 8 to Dennis Decl.

3       From the bank documents, the UST prepared an accounting of how the

4  $140,000 was spent. Id.   Legible notations from copies of the investor canceled

5  checks in Exhibit 8 are designated with quotation marks:

| Date | Ck # | Paid to/Received from | Deposits | With/drawals | Bank Balance | Description |
|------|------|----------------------|----------|--------------|--------------|-------------|
| 3/15/18 | | Beginning balance | | | 857 | |
| 3/15/18 | | Wire credit | 120,000 | | 120,857 | Alan Silver |
| 3/16/18 | | Bank Fees | | 15 | 120,842 | Bank fees |
| 3/16/18 | | Wire out | | 12,000 | 108,842 | JTA Real Estate |
| 3/16/18 | | Bank Fees | | 30 | 108,812 | Bank fees |
| 3/16/18 | 4005 | Cardmember Services | | 9,000 | 99,812 | Credit card payment |
| 3/16/18 | 4004 | James Lara | | 900 | 98,912 | Office |
| 3/16/18 | | Customer withdrawal | | 3,750 | 95,162 | W/D Chris Dougherty |
| 3/19/18 | | Auto Radio Specialists | | 199 | 94,963 | Auto |
| 3/19/18 | | Amazon Mktplace PMTS | | 8 | 94,956 | Amazon |
| 3/19/18 | | Wild Bills Wst | | 615 | 94,341 | Clothing |
| 3/19/18 | | Vintana Restaurant | | 172 | 94,169 | Meals |
| 3/19/18 | | INTUIT *QB ONLINE | | 15 | 94,154 | Office |
| 3/19/18 | | The Gambling Cowboy | | 31 | 94,123 | Meals |
| 3/19/18 | | Filippi's Pizza Grotto | | 55 | 94,068 | Meals |
| 3/19/18 | | Amazon Mktplace Pmts WW | | 395 | 93,674 | Amazon |
| 3/19/18 | | The Bank Of Mexican Foo | | 216 | 93,458 | Meals |
| 3/19/18 | | ATM Withdrawal | | 503 | 92,955 | W/D Chris Dougherty |
| 3/19/18 | | Bank Fees | | 3 | 92,952 | Bank fees |
| 3/19/18 | 4002 | Deborah Gerlack | | 200 | 92,752 | Bank fees |
| 3/20/18 | | Cash withdrawal | | 6,000 | 86,752 | W/D Chris Dougherty |
| 3/20/18 | | Customer withdrawal | | 10,000 | 76,752 | W/D Chris Dougherty |
| 3/21/18 | | TLR transfer to CHK 0222 | | 27,000 | 49,752 | Transfer toBofA Acct 0222 |
| 3/21/18 | 4003 | Helena Dougherty | | 6,500 | 43,252 | Payment to Dougherty family member |
| 3/21/18 | | Fedex | | 31 | 43,221 | Office |

| 3/21/18 | | Albertsons Sto | | | 59 | 43,162 | Food |
|---|---|---|---|---|---|---|---|
| 3/22/18 | | Wire in | 20,000 | | | 3,162 | Harriet Mann Taniyama |
| 3/22/18 | 4007 | Jeffrey & Harriet Taniyama | | | 800 | 62,362 | Payment to investor |
| 3/22/18 | 4008 | Christopher Dougherty | | | 2,500 | 59,862 | W/D Chris Dougherty |
| 3/23/18 | | Bank Fees | | | 15 | 59,847 | Bank fees |
| 3/23/18 | | cash withdrawal | | | 10,000 | 49,847 | W/D Chris Dougherty |
| 3/23/18 | | Customer withdrawal | | | 1,295 | 48,552 | W/D Chris Dougherty |
| 3/26/18 | | cash withdrawal | | | 1,000 | 47,552 | W/D Chris Dougherty |
| 3/26/18 | 4001 | Steve Shafer | | | 600 | 46,952 | "CN0018 4th QTR Dividend" |
| 3/26/18 | 4006 | George & Roberta Thompson | | | 1,100 | 45,852 | Payment to investor |
| 3/26/18 | | TLR transfer to CHK 3868 | | | 2,000 | 43,852 | RD3 Inc. - BofA 3868 |
| 3/28/18 | | TLR transfer to CHK 3869 | | | 1,000 | 42,852 | RD3 Inc. - BofA 3868 |
| 3/28/18 | | cash withdrawal | | | 2,000 | 40,852 | W/D Chris Dougherty |
| 3/28/18 | | TLR transfer to Chk 0222 | | | 5,000 | 35,852 | Transfer toBofA Acct 0222 |
| 3/28/18 | | Wire out | | | 5,000 | 30,852 | JTA Farm Enterprises |
| 3/28/18 | | Bank Fees | | | 30 | 30,822 | Bank fees |
| 3/28/18 | 4009 | Sixta Y Loyo | | | 220 | 30,602 | "4th Qtr CN0029" |
| 3/28/18 | 4010 | CRS - CA REG SERVICES INC | | | 916 | 29,686 | Office |
| 3/29/18 | | TLR transfer to CHK 0222 | | | 21,500 | 8,186 | Transfer to BofA Acct 0222 |
| 3/29/18 | | Jacko Law Group Pc | | | 1,602 | 6,584 | Legal |
| 3/29/18 | | Fedex | | | 90 | 6,494 | Office |
| 3/30/18 | | Fedex | | | 38 | 6,456 | Office |
| 3/30/18 | | ON THE BORDER | | | 100 | 6,356 | Meals |
| 3/30/18 | 4011 | James Lara | | | 900 | 5,456 | Office |

Id.

The Debtors provided the UST with a copy of a letter to Alan and Aleica Silver on JTS Cattle & Hay Broker Services letterhead dated April 20, 2017.  See Dennis Decl. at ¶ 44. The letter thanks the Silvers for becoming an investor and confirms that $120,000 was invested on March 15, 2018 into a hay brokerage deal

paying a dividend of 10%. Id.; Exh 9 to Dennis Decl.  As noted above, the Bank of America statement for account ending in 3774 for March 2018 contained no evidence that the $120,000 received from the Silvers was invested in a hay brokerage deal, which is completely contrary to the representation made to the Silvers in the April 20, 2017 letter. Id.

The balance in Bank of America accounting ending in 3774 was an overdraft of <$1,481.90> when $50,000 was received from the Spruill Family Trust on May 2, 2018.  Dennis Decl. at ¶ 45. By May 11 when the funds had been spent, the balance of the account had been reduced to a further overdraft balance of <$6,218.65>.  Id.; Exh. 10, 11 to Dennis Decl.

From the bank documents, the UST prepared an accounting of how the $50,000 was spent.  Id.  Legible notations from copies of the investor canceled checks in Exhibits 10 and 11 are designated with quotation marks:

| Date | Ck # | Paid to/Received from | Deposits | With/drawals | Bank Balance | Description |
|---|---|---|---|---|---|---|
| 5/2/18 | | Beginning balance | | | (1,482) | |
| 5/2/18 | | Wire in | 50,000 | | 48,518 | Spruill Family Trust |
| 5/2/18 | | Return item | | 4,500 | 44,018 | Charge for amount originally deposited 4/27/18 |
| 5/2/18 | | Bank Fees | | 12 | 44,006 | Bank fees |
| 5/2/18 | 4030 | Returned of posted check/Item received on 5-1 | 200 | | 44,206 | Bank adjustment for C&D NSF check posted 5/1/18 |
| 5/2/18 | 4032 | Elena Totten | | 1,650 | 42,556 | Payment to investor |
| 5/2/18 | | Customer Withdrawal Image | | 5,210 | 37,346 | W/D Chris Dougherty |

| 5/2/18 | | Customer Withdrawal Image | | 4,800 | 32,546 | W/D Chris Dougherty |
|---|---|---|---|---|---|---|
| 5/2/18 | 4036 | Sixta Y Loyo | | 200 | 32,346 | Payment to investor |
| 5/2/18 | 4039 | Mary Gilbert | | 450 | 31,896 | Payment to investor |
| 5/2/18 | | DESTINATION XL | | 459 | 31,438 | Travel |
| 5/3/18 | | Bank Fees | | 15 | 31,423 | Bank fees |
| 5/4/18 | | PAYCYCLE INC | | 1 | 31,422 | Office |
| 5/4/18 | | EGNYTE INC | | 140 | 31,282 | Office |
| 5/7/18 | | HOMESTEAD BAR & GRILL | | 57 | 31,225 | Meals |
| 5/7/18 | | INTUIT *QB ONLINE | | 17 | 31,208 | Office |
| 5/7/18 | | INTUIT *QB ONLINE | | 15 | 31,193 | Office |
| 5/7/18 | | Chevron | | 100 | 31,093 | Auto |
| 5/7/18 | | Chevron | | 78 | 31,015 | Auto |
| 5/7/18 | 4014 | The Spa & Patio Store | | 5,577 | 25,438 | Christopher Dougherty |
| 5/7/18 | | Customer Withdrawal Image | | 5,010 | 20,428 | W/D Chris Dougherty |
| 5/8/18 | | AMAZON MKTPLACE PMTS | | 8 | 20,421 | Amazon |
| 5/8/18 | 4045 | Melba Summers | | 5,000 | 15,421 | "Principal Withdrawl" |
| 5/9/18 | | BJS RESTAURANTS 497 | | 52 | 15,369 | Meals |
| 5/9/18 | | AMAZON MKTPLACE PMTS WW | | 395 | 14,974 | Amazon |
| 5/9/18 | 4048 | James Lara | | 1,050 | 13,924 | Office |
| 5/10/18 | | INTUIT *QB ONLINE | | 15 | 13,909 | Office |
| 5/10/18 | | CHEVRON/CSI | | 85 | 13,824 | Auto |
| 5/10/18 | 4046 | Melba Summers | | 5,000 | 8,824 | "Principal Withdrawl" |
| 5/11/18 | | REDTAIL TECHNOLOGY | | 75 | 8,749 | Office |
| 5/11/18 | | CHEVRON/CSI | | 85 | 8,664 | Auto |
| 5/11/18 | | Counter Credit | 2,000 | | 10,664 | Counter credit/deposit |
| 5/11/18 | | PAYCYCLE INC | 1 | | 10,665 | Other |
| 5/11/18 | 4047 | Brian & Sharon Taylor | | 3,053 | 7,611 | "CN0003 1st QTR Dividend" |
| 5/11/18 | 4033 | Jerry & Anita Cole | | 6,502 | 1,109 | "CN0033 1st QTR Dividend" |
| 5/11/18 | 4043 | CHECK #4043 | | 7,327 | (6,219) | This debtors check was returned NSF on 5/14/18 |

Id.

From the UST's review of available bank statements, the UST has found that the $1,159,378.46 received by the Debtors from investors during the time period December 8, 2017 through May 2, 2018 were used for several purposes, none of which constituted investment of the funds for the benefit of those investors.  <u>See</u> Dennis Decl. at ¶ 46.

The Debtors' practice of using new investment money to pay existing investors dividends and principal gave the false impression that the payments received by investors came from earnings and profits or from a return of their principal.  This deception is the basis of a Ponzi scheme.  <u>See</u> Dennis Decl. at ¶ 47.

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.   <u>Cause Exists To Convert This Case To One Under Chapter 7</u>**

Section 1112(b)(1) provides that a chapter 11 case may be dismissed or converted to chapter 7, whichever is in the best interests of creditors, if the movant establishes "cause."  11 U.S.C. § 1112(b)(1).  The Bankruptcy Code contains several examples of what constitutes "cause", including gross mismanagement and substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation.   11 U.S.C. §§1112(b)(4)(A), 1112(b)(4)(B).

The Court may find that "cause" exists to dismiss or convert this case to one under chapter 7 by finding that one or more of the enumerated factors defined in Section 1112(b)(4) is or are present.  Or, the Court may find that "cause" exists for any reason cognizable to the equitable powers of the Court. In re Hampton Hotel Investors, L.P., 270 B.R. 346, 358 (Bankr. S.D.N.Y. 2001); see also Loop Corp. V. U.S. Trustee, 379 F3d. 511, 515, n2 (8th Cir. 2004)(enumerated list found in Section 1112(b)(4) is not an exclusive one, and the Court is not limited to those specifically enumerated examples to find that "cause" exists to dismiss or convert a case to chapter 7).  Cause exists to dismiss or convert the instant case to one under chapter 7 as follows:

### A.    Unexcused Failure to Satisfy Timely Any Filing Or Reporting Requirement And Failure To Timely Provide Information Reasonably Requested By The UST

Pursuant to section 1112(b)(4)(F) of the Bankruptcy Code, cause to dismiss or convert a case is present when a debtor fails to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter.  See 11 U.S.C. § 1112(b)(4)(F).  Pursuant to Sections 1107(a), 1106(a)(1), and 704(8) of the Bankruptcy Code, the Debtors are required to file with the Court and the UST periodic reports and summaries of their operations, including a statement of receipts and disbursements. See 11 U.S.C. § 1106(a)(1).

1   In addition, pursuant to Section 1112(b)(4)(H) of the Bankruptcy Code, a

2   debtor's failure to timely provide information reasonably requested by the UST

3   constitutes cause to dismiss or convert a bankruptcy case.  See 11 U.S.C. §

4   1112(b)(4)(H).

5   In this case, the Debtors have failed to timely file monthly operating reports

6   since the case inception and have failed to timely provide information reasonably

7   requested by the UST.  The Debtors filed their case on October 9, 2018, but failed

8   to file their October 2018 and November 2018 reports until January 16, 2019.  See

9   Dennis Decl. at ¶ 3.  Similarly, their December 2018 report was filed late on

10  February 5, 2019.  The substantial delays in filing the early reports hampered the

11  ability of the UST and creditors to monitor the Debtors' spending and to bring

12  irregularities to the Court's attention.  Despite having told the Debtors during the

13  341 meetings to close their pre-petition accounts, the UST did not discover until

14  review of the late-filed monthly operating reports that the Debtors continued to use

15  their PayPal and Venmo accounts post-petition.  Statements for these accounts pre-

16  petition and post-petition have not been provided.

17  In addition, the monthly operating reports are wholly inadequate.  The

18  Debtors filed reports containing perfunctory and incomplete information

19  concerning their deposits and withdrawals, prompting the UST to propound 38

20  questions on the Debtors regarding their transactions.  See Dennis Decl. at ¶ 2.  In

21

their monthly operating reports, the Debtors failed to include copies of checks and failed to explain the nature of many transfers between their account and various undisclosed accounts, some of which appear to belong to their minor children.  The Debtors' subsequent explanations for these transactions was inadequate and unsatisfactory.  See Dennis Decl. at ¶ 2; Exh 12 to Dennis Declaration.  It is clear that under section 1112(b)(4)(F) of the Bankruptcy Code, cause to dismiss or convert a case is present.

The Debtors have also failed to timely provide information reasonably requested by the UST.  Following the initial session of the 341 meeting of creditors, on December 6, 2018, the UST began requesting documents from the Debtor, and followed up with several additional requests following additional sessions of the meeting of creditors.  See Dennis Decl. at 1; Exh 1 to Dennis Decl.

Notably, the Debtors have failed to open debtor-in-possession accounts and failed to close their pre-petition accounts.  Also of importance is that the UST requested bank statements for all of the Debtors' entities, and upon review of the documents, discovered that 22 bank accounts remained undisclosed.  Id.  The bank statements reviewed by the UST reveal numerous large cash withdrawals by the Debtors.  The UST requested information from the Debtors about these withdrawals, which has not been forthcoming.  Id.  These are only a few examples

of the deficiencies.  A complete list of all outstanding items is set forth in paragraph 1 of the Dennis Declaration.

Pursuant to Section 1112(b)(4)(H) of the Bankruptcy Code, a debtor's failure to timely provide information reasonably requested by the UST constitutes cause to dismiss or convert a bankruptcy case.  See 11 U.S.C. § 1112(b)(4)(H).  Without timely receipt of information concerning the Debtors' business and financial affairs, the UST can't effectively and meaningfully investigate problems and monitor the progress of the case towards rehabilitation.  Here, the Debtors have not been forthcoming with requested information timely and while the UST has formulated an accurate picture of the problems with the Debtors' business and financial affairs, the full scope of the issues is likely unknown due to the Debtors' lack of compliance.  The UST has established cause for conversion of the case.

**B.  Gross Mismanagement Of The Estate**

Evidence of gross mismanagement of the Estate constitutes cause for conversion under Section 1112(b)(4)(B) of the Bankruptcy Code.  The following activities and omissions by the Debtors constitute gross mismanagement of the Estate:  (1) filing an improper Involuntary Petition on March 13, 2019 against JTA Real Estate; (2) spending Estate funds on unnecessary and/or discretionary items; (3) spending Estate funds on expenses for related entities; (4) failing to prepare proper and complete accountings of Estate revenues and expenses; (5) spending

monies in excess of insider compensation permitted by the Court; (6) filing Rule 2015.3 reports for the Debtors' related entities that contain inaccurate and misleading information; and (7) failing to pay debt service post-petition.

On March 14, 2019, the UST received notice that Christopher Dougherty signed and filed an involuntary petition against JTA Real Estate, case number 19-01366-LT11.  See Dennis Decl. at ¶ 48; Exh 13 to Dennis Decl.  There were no petitioning creditors included in the filing other than Christopher Dougherty. Although Mr. Dougherty indicated in the petition that he is owed "compensation" in the amount of $35,000, this claim is not listed in the Debtors' Schedule B.  Id. Upon information and belief, the filing by Christopher Dougherty was improper under the requirements for an involuntary petition pursuant to the Bankruptcy Code.

The Debtors have obtained two Orders authorizing insider compensation. The first Order was entered on November 19, 2018 (docket no. 38) and permits the Debtors to spend the monthly amount of $6,527.33.  The second Order was entered on February 7, 2019 (docket no. 126) and permits the Debtors to spend an additional $6,500 per month, for total monthly insider compensation of $13,027.33.  The disbursements reported in the monthly operating report for November 2018 were $29,764.27.  See Dennis Decl. at ¶ 9.  The disbursements reported in the monthly operating report for December 2018 were $25,677.95.  Id.

The Debtors have been unjustifiably spending in excess of the amounts authorized by this Court as insider compensation.

A review of the Debtors' post-petition spending reveals that thousands of dollars have been expended on luxury and unnecessary items, including fraternity dues, monthly volleyball fees in excess of $500, college tuition for the Debtors' adult child, and expenses for a timeshare resort.  See Dennis Decl. at ¶ 2; Exh 12 to Dennis Decl.  The Debtors have not explained why the Estate is using funds to pay these items when creditors have not been paid.

The Debtors have also been paying for expenses for their related entities from Estate funds.  See Dennis Decl. at ¶ 4.  These expenses include: feed for cattle, rent for C&D, storage fees for trucks, and labor for work on the ranch.  Id. The Debtors have offered no explanation why the Estate is paying expenses for their related entities.  From a review of the monthly operating reports and the Rule 2015.3 Reports, the UST is not aware of any accounting or bookkeeping entries for post-petition expenses of these entities being paid by the Estate.  Clearly, the Debtors are not capable of properly managing their affairs as debtors-in-possession.

The monthly operating reports reflect numerous transfers between the Debtors and accounts apparently belonging to their children.  See Dennis Decl. at ¶ 10.  The reports include references that are unclear, such as "transfer from shares

Alexis M Dougherty". Id.  A detailed list of the transfers is included in paragraph 10 of the Dennis Declaration.  As previously discussed in this Motion, the UST has requested copies of statements from all bank accounts, but has not received statements for accounts belonging to their children or other family members. Id.

The Debtors have not been paying debt service post-petition.  See Dennis Decl. at ¶ 26.  The January 2019 monthly operating report reflected that the Debtors had not made four post-petition payments to HSBC and two post-petition payments to Lyon.  Stay relief motions filed by Mascot Realty Inc. and Smarter Capital Investments, LLC reveal additional post-petition payments that have not been made.  See Dennis Decl. at ¶ 27.  Charts outlining these post-petition delinquencies are set forth in paragraphs 26 and 27 of the Dennis Declaration.  The Debtors' failure to pay debt service might prove fatal with respect to any reorganization efforts.

Moreover, the Debtors' mismanagement is exacerbated when the UST cannot obtain information and documents in a reasonable and efficient manner. The Debtors have not managed the Estate in accordance with their obligations as debtors-in-possession.  Cause for conversion has been established.

//

//

1

2

### C.    Continuing Loss to the Estate and Absence of a Reasonable Likelihood of Rehabilitation

3

4

5

6

7

8

9

10

11

12

13

11 U.S.C. § 1112(b)(4)(A) allows this court to dismiss or convert a case where there is continuing loss to the estate, and the absence of a reasonable likelihood of rehabilitation.  Section 1112(b)(4)(A) effectuates the purpose of Section 1112(b)(1), which is "to preserve estate assets by preventing the debtor in possession from gambling on the enterprise at the creditors' expense when there is no hope of rehabilitation." Loop Corp. v. U.S. Trustee, 379 F.3d 511, 516 (8th Cir. 2004).  Diminution need not be significant; all that is required "is that the estate has suffered some diminution in value." In re Mense, 509 B.R. 269, 284 (Bankr. C.D. Cal. 2014) (internal citation omitted).  In turn, "[r]ehabilitation contemplates the successful maintenance of the debtor's business operations." Id. (internal quotation marks and citation omitted).

14

15

16

17

18

19

20

Thus, the "issue of rehabilitation for purposes of § 1112(b)(4)(A) is not a technical one of whether the debtor can confirm a plan, but, rather, whether the debtor's business prospects justify continuance of the reorganization effort." In re Hassen Imports Partnership, 2013 WL 4428508 (9th Cir BAP Aug. 19, 2013); See also In re Mense, 509 B.R. at 284 ("[a] reasonable likelihood of rehabilitation is absent when the debtor's business operations do not justify continuance of the reorganization effort.").

21

There is robust evidence of continuing losses to the Estate and similarly strong indications that successful reorganization is unlikely and there are no prospects that justify continuation of the chapter 11 case. At the session of the 341 meeting of creditors held on January 15, 2019, Christopher Dougherty testified that JTA Real Estate would file a chapter 11 case and then file a joint plan of reorganization with the Debtors. Dennis Decl. at ¶ 13. He further testified that the plan would be funded by a sale of the ranch at 21702 Japatul Road in Alpine, which is owned by JTA Real Estate, as well as through income generated by the use of the trucks owned by JTA Real Estate. Id. At this time, it does not appear that either avenue of funding would lead to a confirmable plan for the Debtors or otherwise constitute prospects that justify the Debtors remaining in chapter 11.

JTA Real Estate did not file a Chapter 11 case, as Christopher Dougherty testified it planned to do. On March 13, 2019, Christopher Dougherty filed an involuntary petition against JTA Real Estate. The propriety of this action might have unfavorable consequences for the Debtors' Estate. With respect to the reorganization of the Debtors, however, this action by Christopher Dougherty likely does not further his efforts to achieve a sale and joint plan for the benefit of the creditors in this case. In filing the involuntary petition, Christopher Dougherty is stating that his entity, JTA Real Estate, is insolvent and can't re-pay its creditors. This does not bode well for either the Debtors or JTA Real Estate.

In addition, a review of the 2015.3 periodic reports filed by the Debtors for JTA Real Estate reveal that it does not operate profitably.  As explained earlier in this Motion, the Rule 2015.3 reports filed for JTA Real Estate reflect losses for all periods except for January 2018 - November 2018, which purports to report a gain of $96,963.35.  Dennis Decl. at ¶ 17.  When the UST adjusted the profit and loss statement for "Reconciliation Discrepancies", the adjustment resulted in a loss of <$477,830.80>.  Dennis Decl. at ¶ 18.

The Rule 2015.3 reports filed by the Debtors for JTA Farms similarly reflect that it is not operating profitably and also reveal questionable accounting.  When the UST made appropriate adjustments, there was a net loss in 2017 of <$194,387.64>.  Dennis Decl. at ¶ 19 – 20.  The profit and loss statement included with the Rule 2015.3 report for January to December 2018 reports a loss of <$78,498.16>.  Dennis Decl. at ¶ 21.

Also, this report for JTA Farms contained unusual accounting.  Dennis Decl. at ¶ 22. The general ledger included with the report reveals that $105,000 in income consisted of "equity deposits" received from the "Dougherty Family Trust Fund". Id. These deposits consisted of six $15,000 monthly receipts received between February 1, 2018 and July 1, 2018.  Id. The general ledger also reported $155,097.77 in "Reconciliation Discrepancies" that are not explained in the report. Id.

1    When the UST adjusted the 2018 profit and loss statement for "equity

2    deposits" and "reconciliation discrepancies", the adjusted net loss for this period

3    was <$28,379>.  Dennis Decl. at ¶ 23.

4        The profit and loss statement included with the 2015.3 report for January

5    2019 for JTA Farms also includes a $15,000 equity deposit apparently received in

6    January 2019 and classified as income.  Dennis Decl. at ¶ 24.  The general ledger

7    included with the report did not include an account for equity contributions.

8    Therefore, the UST was unable to determine if the source of the $15,000 was also

9    the Dougherty Family Trust Fund.  Dennis Decl. at ¶ 25.  The Debtors' January

10    2019 Operating Report does not include any disclosure about this $15,000, and

11    does not reference the Dougherty Family Trust Fund.  Id.  To date, the UST has

12    been unable to determine the source of funds associated with the Dougherty

13    Family Trust Fund.

14        In addition, the Debtors cannot reorganize using income from the trucks

15    owned by JTA Real Estate.  The Debtors testified during the 341 meeting of

16    creditors that their entity, RD3, Inc., is a trucking business that purportedly

17    operates using trucks owned by JTA Real Estate.  However, upon information and

18    belief, RD3 does not currently have business operations and also, has never

19    profitably operated a trucking business.

20

21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21

The Debtors filed four Rule 2015.3 periodic reports for RD3, Inc., which collectively cover the time period January 2016 through January 2019.  These reports reflect net gains and losses that demonstrate that RD3, Inc.'s operations do not have the ability to fund a plan.  Dennis Decl. at ¶ 16.  Furthermore, a review of the associated general ledgers shows that 71.2% of the income reported income for 2017 and 86.6% of the income reported by RD3, Inc. for 2018 was for work performed for entities controlled by the Debtors.  Dennis Decl. at ¶ 15.  A summary of the reported income of RD3, Inc. is set forth in paragraph 15 of the Dennis Declaration.

The Rule 2015.3 reports show that RD3, Inc. does not have revenues from third party customers that could fund a chapter 11 plan.  Dennis Decl. at ¶ 16. There is no basis to conclude that the Debtors have experience operating a business, using the trucks owned by JTA Real Estate, with revenues sufficient to fund a chapter 11 plan.  Id.

Also impacting any reorganization efforts is that the operating reports and the motions for relief from the automatic stay filed in this case report that the Debtors are delinquent on the pre and post-petition mortgage obligations. Dennis Decl. at ¶ 26. The January 2019 Operating Report reports post-petition delinquencies to HSBC and Lyon/Chestnut.  Id.  Moreover, the Court docket for

this case reveals that 12 adversary complaints predicated on section 523 to determine dischargeability of debt have been filed against the Debtors.

The entities owned by the Debtors have demonstrated pre-petition and post-petition that they do not have the ability to generate net income that can be used to fund a plan. See Dennis Decl. at ¶ 29. RD3, Inc. is not operating and neither JTA Farms nor JTA Real Estate is able to produce net income.  Id. The Debtors and their entities have been unable to timely pay their monthly post-petition mortgage payments and appear to have no ability to fund the defense of the 12 adversary proceedings.  Indeed, it was reported by Debtors' counsel on the record during the hearing on February 28, 2019 that the Debtors had instructed him not to oppose any adversary proceeding and to stipulate to the full amount being requested in each adversary complaint.  The liability of the Estate attributable to these adversary proceedings is currently unknown.

The losses to the Estate are substantial and continuing, and the Debtors are unlikely to be able to successfully reorganize.  The Debtors have not demonstrated any business prospects that justify continuing this chapter 11 case.  Cause for conversion has been established.

### D.    Conversion to Chapter 7 is in the Best Interests of the Estate

There are many unanswered questions in this case, and it should be closely examined by a trustee.  A pressing question concerns the final disposition of the

proceeds received from investors.  As set forth earlier in this Motion, it appears that over $1.1 million received from investors in 2018 was not invested, a portion of which might be in the possession of the Debtors in the form of cash.  A trustee should consider the possibility of undisclosed accounts and assets, including the accounts apparently belonging to the Debtors' children.

In addition, a trustee is in the best position to determine the appropriate course of action with respect to the Debtors' interest in their closely-held entities. A trustee should step into their shoes to manage and direct those interests in the best interests of creditors.  It's clear that an independent party should examine the case and make a recommendation for the final disposition of the case.

## II.    In The Alternative, A Chapter 11 Trustee Should Be Appointed

The UST is aware that the Debtors collect rents from real property owned by the Debtors and that they own substantial percentages of four closely-held businesses.  Although it is not immediately clear to the UST that the Debtors have active business operations that warrant the appointment of a chapter 11 trustee, the UST has been misled by the Debtors in this case, and does not trust their representation of the status of the operations.  In addition, the UST wishes to consider and preserve the possibility that a chapter 11 trustee might be needed due to the difficulties in administering the complexities of the case and the business interests.

Section 1104(a) of the Bankruptcy Code provides:

At any time after the commencement of the case but before confirmation of a plan… the court shall order the appointment of a trustee-
(1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case…
(2) if such appointment is in the interest of creditors, any equity security holders, and other interests of the estate…

11 U.S.C. § 1104(a).

In this case, the Debtors have been managing the affairs of the bankruptcy estate as Debtors-in-Possession since the commencement of the chapter 11 case. The Debtor-in-Possession is a fiduciary for the estate and its creditors.  See In re Count Liberty, LLC, 370 B.R. 259, 275-76 (Bankr.C.D.Cal. 2007), citing Thompson v. Margen (In re McConville), 110 F.3d 47, 50 (9th Cir. 1997); Woodson v. Fireman's Fund Ins. Co. (In re Woodson), 839 F.2d 610, 614 (9th Cir. 1988); and Devers v. Bank of Sheridan Montana (In re Devers), 759 F.2d 751, 754 (9th Cir. 1985).

In this case, "cause" for appointment of a chapter 11 trustee exists under section 1104(a)(1) of the Bankruptcy Code due to pre-petition fraud and post-petition gross mismanagement.  The Debtors' post-petition gross mismanagement has been outlined earlier in this Motion with respect to the UST's argument that

cause to convert the case has been established pursuant to Section 1112(b)(4)(B) of the Bankruptcy Code.

As also noted earlier in this Motion, the UST has found substantial and credible evidence that, pre-petition, the Debtors engaged in a Ponzi scheme with respect to funds received from investors. From the UST's review of available bank statements, the UST has found that the $1,159,378.46 received by the Debtors from investors during the time period December 8, 2017 through May 2, 2018 were used for several purposes, none of which constituted investment of the funds for the benefit of those investors. See Dennis Decl. at ¶ 46.

The Debtors' practice of using new investment money to pay existing investors dividends and principal gave the false impression that the payments received by investors came from earnings and profits or from a return of their principal. This deception is the basis of a Ponzi scheme. See Dennis Decl. at ¶ 47. This Ponzi scheme is clearly fraud that constitutes "cause" within the meaning of Section 1104(a) of the Bankruptcy Code.

In addition, Section 1104(a)(2) creates a flexible standard for appointing a trustee when it is in "the interests of creditors, equity security holders and other interests of the estate." In re: SonicBlue Inc., 2007 Bankr, LEXIS 1057 *30 (Bankr. N.D. Cal. 2007), quoting, In re Sharon Steel Corp., 871 F.2d 1217, 1226 (3d Cir. 1989). The Debtors are currently subject to 12 adversary proceedings filed

by creditors under Section 523 requesting that debts be declared non-dischargeable.  Conflict between a debtor and its creditors can constitute cause for appointment of a Chapter 11 Trustee.  In re Marvel Entertainment Group, Inc., 140 F.3d 463, 472-73 (3rd Cir. 1998).

In addition, as the facts continue to unfold, the UST would like to preserve the opportunity to request that the Court consider appointment of a chapter 11 trustee if it becomes known prior to the hearing on this Motion that either the Debtors' business operations are such that a chapter 11 trustee is needed for ongoing business operations or the Debtors' business interests and financial affairs are too complex to be appropriately handled within the context of a chapter 7 case.

## CONCLUSION

These Debtors cannot remain in possession due to their mismanagement of the Estate, their inability to successfully reorganize, their failure to timely comply with reporting requirements and UST requests for information, and their pre-petition fraudulent conduct with investor funds.  A trustee must be appointed for cause and in the best interest of creditors.  The UST would like to further consider, and asks that the Court and creditors further consider, whether a chapter 7 trustee

//

//

1 | or a chapter 11 trustee would best serve the interests of the Estate and creditors in

2 | this case.

3 | Respectfully submitted,

4 |

5 | TIFFANY L. CARROLL
ACTING UNITED STATES TRUSTEE

6 |

7 | Dated:  March 14, 2019            By:    /s/ Kristin T. Mihelic
Kristin T. Mihelic
Attorney for the Acting United

8 | States Trustee

9 |

10 |

11 |

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |